Rudy *v.* McCloskey & Company, Appellant.

102

Argued October 27, 1942.

Before KELLER, P. J., CUNNINGHAM, BALD-RIGE, RHODES, HIRT and KENWORTHEY, JJ. (STADTFELD, J., absent).

*John W. Kephart,* with him *Arthur C. Dale,* for appellant.

*William W. Litke,* of *Fleming & Litke,* for appellee.

OPINION BY HIRT, J., March 10, 1943:

Defendant McCloskey & Company, in the course of constructing a building in the Borough of State College, requested a local labor union to supply workmen. George Albert Rudy was among those who appeared. He had been admitted to membership in the union on his representation that he was over 18 years of age, the minimum age requirement, and on October 26, 1938 when questioned, told defendant's employment agent that he was born on May 10, 1920. Relying on this representation defendant employed him as a laborer. On November 16, 1938, when Rudy was about to remove a wheelbarrow filled with concrete from a construction elevator, it was set in motion by someone from below; he was thrown from the platform and fell fifty feet to the ground and was killed instantly. Thereafter, Bellefonte Trust Company was appointed guardian of his minor widow and their two children and on their behalf entered into an agreement with defendant providing for normal workmen's compensation amounting to $10,129.56 payable in accordance with the act. There is no dispute as to that. The controversy arose over the claim for additional compensation in like amount under §320 of the Compensation Act, as amended June 4, 1937, P. L. 1552, §1, 77 PS 672,[1] on

[1] "(a) If the employe at the time of the accident is a minor, under the age of eighteen years, employed or permitted to work in violation of any provision of the laws of this Commonwealth

the ground that at the time of his death, decedent was under 18 years of age and was illegally employed. He, in fact, was then only a few days over 17½ years of age; he was born on May 10, 1921. The Board found that defendant was liable for double compensation and the lower court entered judgment on the award.

Decedent's employment by defendant was unlawful but not merely because he was under 18. The law was violated only in that defendant failed to procure an employment certificate in accordance with the Child Labor Act.[2] Decedent was eligible for employment on certification. He was not employed "in the *operation* or *management* of hoisting machines" contrary to §5 of the Act, 43 PS 44, and he could have been employed legally to do the work in which he was engaged at the time of his death, if this formality had been observed. There is no evidence that he was physically unfit and with the responsibility of a family to support an employment certificate undoubtedly would have been issued as a matter of routine. If these essentials,

relating to minors of such age, compensation, either in the case of injury or death of such employee, shall be double the amount that would be payable to such minor if legally employed. The amount by which such compensation shall exceed that provided for in case of legal employment may be referred to as 'additional compensation.'

(b) The employer and not the insurance carrier shall be liable for the additional compensation. Any provision in an insurance policy undertaking to relieve an employer from such liability shall be void."

[2] "Before any minor under eighteen years of age shall be employed, permitted or suffered to work in, about, or in connection with, any establishment, or in any occupation, the person employing such minor shall procure and keep on file, and accessible to any attendance officer, deputy factory inspector, or other authorized inspector or officer charged with the enforcement of this act, an employment certificate as hereinafter provided, issued for said minor." Act of May 13, 1915, P. L. 286, §8, as amended by the Act of July 19, 1935, P. L. 1335, §1, 43 PS 49.

which do not go to the factual merits of the claim, had been complied with, only normal compensation would have been demanded. This appeal raises the single question of the constitutionality of §320 of the act as applied to the class of claims such as here presented. Although not bearing on the question, (*Mitchell v. Mione Mfg. Co.*, 112 Pa. Superior Ct. 394, 171 A. 114; §306(b) of the 1937 amendment, supra, 77 PS 421) it may be observed that if the judgment is valid, claimant's wards will benefit to the extent of over $10,000 as the fruits of decedent's deceit and fraud.

It is appellant's contention that double compensation is unconstitutional because unreasonable; that the additional payment is a penalty, and in any event was reduced to 10% of normal compensation by the amendment of June 21, 1939, P. L. 520.[3] Appellee maintains that the doubled amount is all workmen's *compensation;* that as such it is reasonable and therefore the provisions of the section are constitutional.

The subject of minors in industry in relation to workmen's compensation had been under consideration by a number of commissions appointed for that purpose.[4] And it may be that a provision for double com-

---

[3] We do not agree that the 1939 act is applicable. That amendment provides in §503: "Nothing in this act shall affect or impair any rights of action which shall have accrued before this act shall take effect ......" Although a repetition of the language of the corresponding section of the Act of 1915, in our opinion this clause operates as of the effective date of the 1939 act and saves claimants' rights if entitled to recover. Cf. Statutory Construction Act of May 28, 1937, P. L. 1019, §96, 46 PS 596. The reduction of the "additional compensation" does not operate retrospectively. *Lewis v. Pennsylvania R. R. Co.*, 220 Pa. 317, 69 A. 821; *Kay v. Pennsyvania Railroad Co.*, 65 Pa. 269.

[4] Appellee refers to the following:

A committee of the White House Conference appointed by President Hoover in 1930, recommended: "Illegally Employed Minors: In depriving illegally employed minors of such rights

pensation was written into the laws of a number of the States from mingled motives: To provide quid pro quo by approximating the value to the minor of the common law and statutory remedies which were taken from him; because normal compensation for death or for serious permanent injury, reducing earning power for life was considered inadequate when measured by the small wages the minor received; to enforce the Child Labor Law by compelling the employer himself to pay the excess over normal compensation.

Legislative authority to enact workmen's compensation laws in our State rests upon the constitutional amendment of November 2, 1915, Art. III, §21.[5] The title of the basic Workmen's Compensation Act of 1915, P. L. 736 stamps it a purely compensation measure. Its purpose was to provide recompense commensurate with the damage from accidental injury, as a fair exchange for relinquishing every other right of action against the employer. *Blake v. Wilson*, 268 Pa.

as they have attained under the common law, which as a general rule prevents the employers of such minors from pleading the usual common law defenses and makes recovery of damages at law easier than in the case of legally employed minors or of adults, it is only just that some special provision should be made in all States, as has already been done in a few, for additional compensation. Such legislation should provide that additional compensation be paid in all cases of minors under 21 injured while employed in violation of any provision of the child labor law or of any ruling made by the State department of labor or industrial commission which had the force of the law; the amount of extra compensation to be at least 100 per cent of that of the regular compensation; and the employer be made personally liable for the payment of the additional compensation, with the insurance company secondarily liable only in cases where the employer is insolvent."

In accordance with the recommendation of a Wisconsin Industrial Commission, treble compensation was written into the Wisconsin law, for injury or death of a minor illegally employed.

A New York State Commission had reported in part: "......
There are special reasons furthermore why compensation to

469, 474, 112 A. 126. The act which the amendment authorized is social legislation. "Its purpose is to relieve to some extent the employee ...... from the economic consequences of his injury and make them a part of the cost of operation of the business, to be paid ultimately by the consuming public, and it should be so construed as to carry this purpose into effect": *Hale v. Savage Fire Brick Co.*, 75 Pa. Superior Ct. 454. The effect of the constitutional amendment, with the accent upon "reasonable" compensation, which it authorized, is to limit legislative power and to keep it within bounds.

The basic Compensation Act of 1915 did not include minors employed in violation of the Child Labor Laws, within the classes of employees governed by it. Such minor still had the common law remedy of an action

these children should be on a different scale. First, there is a difference in classification between employers who are conducting the industry in compliance with the law and those who are not. Second there is a difference between the rights of little children unlawfully employed and the rights of adults in cases of industrial accidents. The infant has far more of common law right to surrender when he comes under Workmen's Compensation than the adult. His right of recovery is much greater, and his loss by having the compensation law the sole substitute for these common law rights is greater than in the case of the adult employee ...... To take away all common law rights of these children and give them simply the scanty compensation to which their low wages would entitle them under the workmen's compensation law, in many cases would work a distinct injustice to these children ...... Should we not rather provide through such an amendment as the Commission here recommends that the average return to children so injured be made more nearly adequate by doubling the recovery?"

[5] The amendment in part provides: "The General Assembly may enact laws requiring the payment by employers, ...... of reasonable compensation for injuries to employes arising in the course of their employment, ...... fixing the basis of ascertainment of such compensation and the maximum and minimum limits thereof, and providing special or general remedies for the collection thereof; ......"

in trespass with the advantages incident to his status as a minor. *Lincoln v. National Tube Co.,* 268 Pa. 504, 112 A. 73. This was the law until the amendment of April 14, 1931, P. L. 36, when §320 was first added to the Compensation Act. But since children of this class were brought under the act, the theory of workmen's compensation must apply to them as well as to the adult workman. What the child receives must have some reasonable relation to the schedules of compensation payable generally under the act.

Considered as 'compensation' the award in this case when added to the normal payments provided by the agreement, is excessive in amount. Decedent's weekly wage was found to be $21.45 (based upon a daily wage of $3.90 multiplied by 5½ days) although his actual earnings ranged from $16 to but $20. The basic weekly compensation payment is $13.94. Thus, if compensation is doubled, decedent's dependents will receive $27.88 weekly or $6.43 more than decedent's theoretical weekly wage and $17.88 more than he actually earned in any week while employed by defendant. Compensation payable generally, under the act, is subject to the limitation that it may not be in excess of what the deceased employee was regularly earning by way of wages, out of which he supported himself and his dependents. *Ware v. Northern Metal Co.,* 147 Pa. Superior Ct. 102, 24 A. 2d 119. Considered from the viewpoint of decedent's former earnings the provisions of §320 produce an unreasonable result. "A law which requires an employer to pay a disabled employee ...... more than the employee earned before his disability arose, does not conform to the constitutional test of reasonableness": *Rich Hill Coal Company v. Bashore,* 334 Pa. 449, 461, 7 A. 2d 302.

Whatever prompted similar legislation in other States, it seems clear that the additional payment required by our 1937 Act was essentially a penalty imposed upon

the employer for violating the Child Labor Laws. From the language of §320 it is apparent that it was aimed at the employer and was not enacted wholly in the interest of the minor or his dependents. It is unimportant that the amendment provides that the amount exacted "may be referred to as 'additional compensation.'" Its essential nature cannot be changed by a name authorized by the legislature. If it were what it purports to be, there would be no need to give it a name.[6] The dominant intent of the section, to penalize the employer is indicated by the provision that the employer alone "shall be liable for the additional compensation" and "any provision in an insurance policy undertaking to relieve an employer from such liability shall be void." This provision is signficant when considered in connection with the general policy of the act not only to provide compensation but to see to it that it is paid. §305, 77 PS 501 provides that every employer liable, shall insure the payment of compensation in the State Workmen's Insurance Fund or in some insurance company unless of sufficient financial ability to qualify for self insurance. Under §320 the employee would have to take the chances of his employer's insolvency with no insurance to protect him.

Considered either as 'compensation' or as a 'penalty', or a combination of both, the award in this case cannot be justified on the ground of classification of workmen entitled to benefit in different degrees under the compensation act.[7] The constitutional amendment author-

[6] There is some analogy in the law of contracts. The parties may provide for the payment of "liquidated damages" but their collection may be barred, regardless of what the parties agree they shall be called, when they are in fact a penalty because excessive as damages. *Stewart v. Turner,* 67 Pa. Superior Ct. 255; *Shreve v. Brereton,* 51 Pa. 175; *Holmes Elec. Co. Phila. v. Goldstein,* 147 Pa. Superior Ct. 506, 24 A. 2d 161.

[7] There are at least three classes of minors of different status under the Child Labor Act of 1915 as amended in 1935; (1)

izes "fixing the basis of ascertainment of such compensation and the maximum and minimum limits thereof." Since *compensation* is the purpose of the amendment both the basis and the limits, in general, should be uniform in legislation authorized by it. To justify deviation from uniformity in the operation of the compensation law, there must be some reasonable and substantial relation between the merits of the claims of the various classes of workmen and the difference in the relief sought to be granted by the act. Where classification is set up it should be reasonable and necessary. *Rich Hill Coal Company v. Bashore,* Supplemental opinion, 334 Pa. 497, 7 A. 2d 325. "Classifications are permitted only when founded upon reason and logic." Otherwise they offend against the equal protection clause of the fourteenth amendment of the Constitution of the United States. *Com. ex rel. Sullivan v. Ashe,* 325 Pa. 305, 188 A. 841. A fatal weakness of appellee's position, in our opinion, is that there is a wide difference in the status of minors who are eligible for employment and those who are not. One who hires a boy under fourteen may be a flagrant violator of the law. One who fails to obtain an employment certificate for a 17½ year old boy, otherwise qualified, at most may be negligent. In placing both in the same class, the section, by requiring double payment without regard to

---

children under fourteen years of age who may not be employed, (2) minors between fourteen and sixteen who are employable but may not be permitted to work "in connection with any manufacturing or mechanical occupation or process" or in other specified occupations prohibited by §5. A minor in this class may be entitled to a "Vacation employment certificate," permitting employment which will not interfere with school attendance. (3) The field of employment is not so restricted as to a minor between sixteen and eighteen although he is barred from stated hazardous occupations. A minor in this class may receive a "vacation certificate" or a "general employment certificate" permitting him to work during the entire year. 43 PS 44, 52.

the difference in basic merit or the seriousness of the employer's offense, is arbitrary and capricious. The legislature undoubtedly had this in mind when in the Act of 1939, instead of classifying minors illegally employed, it reduced the additional obligation of the employer to 10% of normal compensation.

Excessive compensation is prohibited by the constitution when it imposes an unreasonable burden on industry. *Rich Hill Coal Co. v. Bashore,* supra. Without relation to the burden on industry additional compensation may offend against the constitutional amendment where a classification in the act is too comprehensive, and payments, unreasonable in amount, as to a considerable number within the class, are directed to be made to all alike without discrimination. We think that the legislature may impose reasonable penalties under the amendment, to enforce compliance with the compensation act, but a penalty though payable as compensation, is open to objection if excessive; it also must be reasonable in amount. Our conclusion is that an additional award of more than $10,000 to claimant in this case, is unreasonable and therefore unconstitutional either as compensation or as a penalty,[8] or both, when the only violation of the Child Labor Law is the failure to secure an employment certificate for a minor, eligible for employment, which might have been had for the asking.

The judgment is reversed and is directed to be entered for the defendant.

---

[8] The penalty imposed by §23 of the Child Labor Act of 1915 is moderate by comparison—a fine of not less than $10 nor more than $200 or imprisonment of not more than 10 days, or both. 43 PS 65.